**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0646n.06

No. 20-3155

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 12, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| 1701 EXPRESS, INC., d/b/a Citgo, | ) | |
| | ) | |
| Petitioner, | ) | **ON PETITION** FOR REIVEW OF |
| | ) | A DECISION OF THE |
| | ) | DEPARTMENTAL APPEALS |
| v. | ) | BOARD OF THE DEPARTMENT |
| | ) | OF HEALTH AND HUMAN |
| SECRETARY OF HEALTH AND HUMAN | ) | SERVICES IN CASE No. A-19-117 |
| SERVICES; DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES, | ) | **OPINION** |
| | ) | |
| Respondents. | ) | |
| | ) | |

**BEFORE: NORRIS, SUTTON, and KETHLEDGE, Circuit Judges.**

**PER CURIAM.** Petitioner 1701 Express, Inc., d/b/a Citgo, asks us to review the decision of the Departmental Appeals Board of the United States Department of Health and Human Services. The Board imposed a thirty-day "No Tobacco Sale Order" ("NTSO") based upon petitioner's repeated violations of the Family Smoking Prevention and Tobacco Control Act ("TCA"), Pub. L. No. 111-31, 123 Stat. 1776 (2009). The crux of petitioner's argument is that the sanction imposed failed to accord sufficient weight to the remedial steps it took in the wake of these infractions to ensure that no future violations would occur.

The TCA established the Center for Tobacco Products ("CTP") within the Food and Drug Administration ("FDA") and authorized the Secretary of Health and Human Services to issue regulations restricting the sale and distribution of tobacco products. 21 U.S.C. §§ 387a(e), 387f(d). The regulations at issue in this appeal require a retailer of tobacco products to refrain from selling

"covered tobacco products to any person younger than 18 years of age." 21 C.F.R. § 1140.14(b)(1). Furthermore, each retailer must verify the purchaser's age "by means of photographic identification containing the bearer's date of birth" unless that person is over the age of 26. 21 C.F.R. § 1140.14(b)(2). As it did here, the CTP may seek to impose an NTSO when any person repeatedly violates a requirement of the TCA at "a particular retail outlet." 21 U.S.C. § 333(f)(8). A "repeated violation" is defined by the TCA as "at least 5 violations of particular requirements over a 36-month period at a particular retail outlet." TCA, § 103(q)(1)(A), 123 Stat. at 1838 (reprinted in 21 U.S.C. § 333 note).

When imposing a civil penalty, including an NTSO, the TCA instructs the FDA to "take into account the nature, circumstances, extent, and gravity of the violation or violations and, with respect to the violator, ability to pay, effect on ability to continue to do business, any history of prior such violations, the degree of culpability, and such other matters as justice may require." 21 U.S.C. § 333(f)(5)(B).

As part of its enforcement mechanism, the CTP promulgated guidelines establishing maximum NTSO durations. *See* Determination of the Period Covered by a No-Tobacco-Sale Order and Compliance with an Order: Guidance for Tobacco Retailers, at 4 (Aug. 2015) *available at* http://www.fda.gov/media/93328/download. The Guidance sets a period of 30 calendar days for a first NTSO; 60 days for a second; and a permanent NTSO for any subsequent violation. *Id.*

This appeal arises from proceedings related to an administrative complaint filed by the CTP on April 9, 2018, which sought a 30-day NTSO against 1701 Express, a retail outlet operating as a Citgo station in Detroit, Michigan. App. 22. In response, the store's owner, Fadel Bazzi, wrote to the administrative law judge to ask that he consider the following before imposing an NTSO:

> On September 28th a young lady came into our location and requested to purchase a pack of Marlboro Lights cigarettes. The clerk asked her if she is at least 18 years of age. The young lady said yes and the clerk sold her the pack of cigarettes. . . . If this minor was honest and said, "no, I am not 18", the clerk would have never sold the minor the pack of cigarettes. We have video and audio of this incident. . . . After this incident occurred, we immediately installed a new system that requires the clerk to enter the customer's birthday for any tobacco product purchases. . . . Our goal is to never sell any type of tobacco product to anyone under the age of 18, and that will always be our goal.

App. at 30; *see also* App. 36 (prehearing declaration of Mr. Bazzi) (same).

An administrative law judge subsequently rendered an initial decision that imposed a 30-day NTSO against 1701 Express "based on . . . repeated violations of [the] federal tobacco regulations over a period of 36 months." App. at 4. After summarizing the statutory and regulatory scheme referenced earlier, the administrative law judge made the following factual findings:

> Respondent is a repeated violator of law and regulations governing the sale of tobacco products to minors. Respondent admitted to multiple violations occurring between March 15, 2015 and January 14, 2017. These violations include: unlawfully selling tobacco products to a minor on March 15, 2015; two additional unlawful sales on March 26, 2016 and January 14, 2017; failing to verify a purchaser's age by means of photographic identification on March 15, 2015; and two additional failures to verify age by means of photographic identification on March 26, 2016 and January 14, 2017. These admitted violations are administratively final and may not be challenged by Respondent.

> The sale of tobacco products that triggered this case occurred on September 28, 2017. . . .

> Respondent does not deny selling cigarettes to the minor purchaser. It contends, however, that the purchaser misrepresented her age to Respondent's employee, thus duping the employee into making a prohibited sale. As proof for this assertion Respondent offered an excerpt of an audio tape that allegedly records the transaction at issue.

> I find Respondent's evidence to be unpersuasive. The tape excerpt records the employee asking someone whether he/she is 18, followed by a brief period of silence, and the employee's verbal statement: "you good." There is nothing on the tape proving that the minor purchaser affirmatively represented her age to be 18. Moreover, even if the minor had done so, that did not relieve the employee of his duty to request the purchaser's identification and to verify the purchaser's age from

the identification. Had the clerk done so the purchaser's actual age (16 in this case) would have been evident.

. . . The unlawful sale on that date coupled with the failure by Respondent's employee to verify the purchaser's age amount to two more repeated violations in addition to the four previous and administratively final repeated violations. . . .

I find imposition of an NTSO of 30 consecutive calendar days against Respondent to be reasonable. It is evident that multiple civil money penalties have not deterred Respondent from continuing to sell tobacco products in violation of the law.

App. at 7-8 (citations omitted).

Petitioner contested this decision to the departmental appeals board. Among other things, it faulted the administrative law judge for failing to consider mitigating factors, such as steps subsequently taken to prevent future violations and the administrative law judge's failure to credit Mr. Bazzi's unrebutted assertion that the minor misrepresented her age. The Board rejected these contentions, however, finding that the administrative law judge's decision was supported by substantial evidence. Moreover, even had the minor misrepresented her age to the clerk—a point both the administrative law judge and the Board rejected—petitioner would still be required to verify the minor's age. Accordingly, the Board affirmed the administrative law judge's decision.

On appeal, we do the same. To begin with, petitioner faces a relatively onerous standard of review. In accordance with the Administrative Procedure Act, we must affirm the Board's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Hosseini v. Nielsen*, 911 F.3d 366, 371 (6th Cir. 2018) (quoting 5 U.S.C. § 706(2)(A)).

Although couched in several different forms, petitioner's core argument is that it responded to the complaint at issue by doing precisely what the TCA encouraged it to do: adopt and enforce a written policy against sales to minors; inform its employees of that policy; establish employee discipline for noncompliance; and require employees to verify age by way of photographic identification or electronic scanning device. 21 U.S.C. § 333 note (TCA § 103(q)(1)(F)).

According to Mr. Bazzi's declaration, petitioner complied with these recommendations and, "[s]ince installing the new point of sale system, I have received no reported issues from my employees." App. at 37. However, the Board concluded that these steps did not preclude the issuance of a NTSO because they were undertaken after this citation was issued and "Respondent cites no authority suggesting that the mere absence of additional violations (or at any rate, observed violations) reduce Respondent's culpability for the September 28, 2017 violations, which the ALJ correctly determined had occurred." App. at 16 (citation omitted). Petitioner takes the position that "[b]y refusing to acknowledge steps undertaken by Petitioner (even if found to have been implemented as of April 21, 2018), the Board has exceeded its authority by reading limitations into the TCA where none exist." Appellant Brief at 21.

Our reading of the Board's decision does not square with that of petitioner. Contrary to its reading, the Board did not entirely discount the remedial measures put in place in the wake of the violation; it merely weighed them in the context of the framework erected by the TCA:

> To the extent that the ALJ did not expressly discuss all of Respondent's claims of mitigation, we find no harm since we conclude that such steps as may have eventually been taken do not compel a reduction in the NTSO period. While the FDA Guidance does not, as the ALJ recognized, have the force of law, it presents a reasonably calibrated regime of escalating responses to repeated violations. Respondent bears the burden to prove any defense or mitigation by a preponderance of the evidence. Given the full circumstances here, including belated measures that Respondent reports taking, we agree with the ALJ's assessment that the period sought by the CTP is appropriate.

App. at 17 (citations omitted). In short, the Board considered the "full circumstances" before concluding that the NTSO was appropriate. As mentioned earlier, we do not review this conclusion de novo, but rather under an arbitrary and capricious standard. Applying that standard to the facts presented to us, we conclude that more than ample evidence supports the Board's decision.

Accordingly, the petition for review is **denied**.

5